Case 1:19-cv-00036   Document 192   Filed on 03/04/22 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
March 04, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROGELIO ROEL BUSTINZA, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 1:19-cv-36 | |
| § | | |
| OMAR LUCIO, et al., § | | |
| Defendants. § | | |

# REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On March 11, 2019, Plaintiff Rogelio Roel Bustinza filed a prisoner civil rights complaint. Dkt. No. 1.  As relevant here, Bustinza claimed that (1) he was assaulted by fellow inmates at the behest of Sgt. A. Delgado, in retaliation for a grievance that Bustinza filed on behalf of a fellow inmate, and (2) he was subjected to a shakedown by C.O. Rodriguez as retaliation for filing grievances.

On January 5, 2022, Delgado and Rodriguez filed a motion for summary judgment and motion to dismiss. Dkt. No. 175.  Delgado seeks summary judgment as to the claims against him and Rodriguez seeks dismissal of the claims made against him. Id.  Bustinza has filed a response. Dkt. No. 185.

After reviewing the record and the relevant case law, the Court concludes that summary judgment is appropriate as to both claims and sua sponte invokes summary judgment as to the claims against Rodriguez.[1]

## I. Background

### A. Factual Background

On the evening of March 4, 2018, Bustinza was arrested for three counts of operating a motor vehicle while intoxicated, with a child under the age of 15 in the vehicle.

---

[1] As discussed later in this report and recommendation, the Court can invoke summary judgment sua sponte if the parties are given notice and an opportunity to respond.  The Fifth Circuit has held that a magistrate judge's report and recommendation satisfies the notice and opportunity requirements. U.S. v. Willis, 273 F.3d 592, 597 n. 6 (5th Cir. 2001).

1

Dkt. No. 191, p. 1.  In the early morning hours of March 5, 2018, Bustinza was booked at the Carrizales-Rucker jail in Olmito, Texas. Id.

On March 9, 2018, Bustinza filed an "Inmate Request Form," seeking information on the charges that he faced. Dkt. No. 191, p. 44.  An unidentified jail official responded with a listing of the three counts of driving while intoxicated. Id.  On that same day, Bustinza filed another request form, apparently seeking information from the law library; a jail official replied, "no library available in this jail." Id., p. 45.

On March 14, 2018, Bustinza filed another request form, asking to speak to his lawyer and his family because he wanted his medication. Dkt. No. 191, p. 46.  On March 16, 2018, a jail official denied the request because Bustinza saw his family on March 15th. Id.

In his complaint, Bustinza alleges that on March 15, 2018, he filed a grievance on behalf of fellow inmate Daniel Torres, who suffered a seizure. Dkt. No. 1, p. 6. The grievance stated that Torres should have been in a different form of custody because his placement was not proper for someone with Torres' medical needs. Id.  Bustinza claims that an unknown sergeant came to the cell block the same day that the grievance was filed and "wanted to know who filed the grievance and who was the troublemaker and that he had beaten inmates before and if we inmates didn't take care of the problem, he would." Id. The unnamed sergeant stated he would "cut the phones off and turn the TV off and cut visits" because of the grievance. Id. Bustinza alleges that he was assaulted by his fellow inmates that same day after the sergeant's visit. Id.

On March 20, 2018, Bustinza filed another inmate request, seeking the address for the federal courthouse, on the grounds that "grievances have gotten any back, not getting my mail and newspaper [illegible word] have been paid for, request reimbursement." Dkt. No. 191, p. 43.  An unidentified jail official responded with the address to the federal courthouse. Id.

On March 25, 2018, Bustinza filed an inmate request, complaining that mail sent by his uncle, regarding his criminal case, was opened. Dkt. No. 191, p. 47.  The jail official

replied that unless the mail came directly from the filer's attorney or the judge, it would be opened and examined. Id.

On April 4, 2018, Bustinza filed an inmate request, seeking copies of Black's Law Dictionary and the U.S. Code Annotated Constitution. Dkt. No. 191, p. 48. The next day, a jail official replied that he should speak to his attorney or his family about providing him those books. Id.

On April 25, 2018, Bustinza filed an inmate request, seeking information on the charges that he faced. Dkt. No. 191, p. 49. An unidentified jail official responded with a listing of the three counts of driving while intoxicated. Id.

On May 10, 2018, Bustinza filed an inmate request, seeking the address to the Harris County Clerk's Office; on that same day, a jail official responded with the address. Dkt. No. 191, p. 50.

On May 11, 2018, Bustinza filed an inmate request, wanting to know if he had any holds that would prevent him from being released on bond. Dkt. No. 191, p. 51. On May 12, 2018, a jail officer replied by listing the bond amounts in his case. Id. On that same day, Bustinza filed another inmate request, seeking clarity on whether he had a hold that would prevent him from being released. Id., p. 52. The next day, a jail official replied that there were no such holds. Id.

On May 13, 2018, Bustinza, alleged that C.O. Rodriguez made him hurry to the medical department and then left him in a new pod while the officers shook down Bustinza's prior pod placement. Dkt. No. 1, p. 13. Bustinza alleged that this was the third or fourth time in a row that his pod had been searched. Id. Bustinza claims that his bedding, legal paperwork, letters, and personal items were taken during these searches. Id. Bustinza explained that "C.O. Rodriguez asked me if I had filed some grievances and if I was the troublemaker, I told him that I had file some but that I was not a trouble maker that I only wanted to be left alone to do my time. He said he didn't care the C.P.L. Sgts. would come in with the grievances in there hand and asking Inmates who wrote them and give them Back they would shake us down after say that sometime and other time they would give

3

them Back to inmates saying that we needed to take care of the problem." Dkt. No. 37, p. 8 (grammatical and typographical errors in original).

The state court docket reflects that Bustinza posted bond on June 25, 2018. State v. Bustinza, Case No. 2018-DCR-01009 (103rd Dist. Court, 2018). During his incarceration, Bustinza made numerous sick call requests. Dkt. No. 191-1. He complained about injuries to his shoulder and hands, apparently from how the arresting officer placed the handcuffs on him. Dkt. No. 191-2, pp. 30-31. He also made sick calls because he was suffering from anxiety. Dkt. No. 191-1, pp. 25-26, 30. Bustinza was also given treatment for alcohol withdrawal during his first 10 days of incarceration. Dkt. No. 191-2, p. 36.

**B. Procedural History**

On March 11, 2019, Bustinza and fellow inmate Daniel Torres filed a prisoner civil rights complaint. Dkt. No. 1. Bustinza made claims regarding: (1) the assault incited by a jail officer after he filed the grievance on behalf of Torres; (2) that he was not given meat-free meals during Lent; (3) that his mail was tampered with; (4) he was denied access to the Courts; (5) he was not given proper medical care for the injuries he suffered when he was arrested; (6) his heartburn was not properly treated; (7) his Freedom of Information Act requests went unanswered; (8) the conditions of confinement were unconstitutional; (9) jail officers repeatedly threatened him; and (10) he was subjected to the shakedown by C.O. Rodriguez. Dkt. No. 1. In his original complaint, Bustinza did not identify the officer who allegedly incited the inmates to assault him.

On that same day, Bustinza also filed a motion to proceed in forma pauperis (IFP). Dkt. No. 3.

On March 15, 2019, the Court severed Torres's claims into a separate case, while keeping Bustinza's claims in this case.[2] Dkt. No. 16.

On March 18, 2019, the Court ordered Bustinza to complete an interrogatory to further flesh out the facts supporting his claims. Dkt. No. 21. The Court also ordered Cameron County to file Bustinza's jail disciplinary and medical records. Id.

---

[2] Torres's case was later dismissed for want of prosecution. Torres v. Lucio, 2019 WL 4689134 (S.D. Tex. Sept. 26, 2019).

On April 17, 2019, Cameron County filed Bustinza's disciplinary and medical records. Dkt. No. 34.

On May 1, 2019, Bustinza filed his response to the interrogatories. Dkt. No. 37. His responses became part of the complaint, akin to a more definite statement. Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996). In those interrogatories, Bustinza stated that he had successfully ascertained the name of the jail officer who incited the inmates to assault and wrote it down, but Sgt. Delgado took away his diary and calendar. Dkt. No. 37, p. 2

On May 24, 2019, the Court ordered Bustinza to supplement his IFP motion with a certified copy of his prison account statement. Dkt. No. 42. On June 11, 2019, Bustinza filed the prison account statement. Dkt. No. 45.

On June 19, 2019, the Court ordered Bustinza to pay an initial filing fee of $15 and noted that it would not order service on any defendant until Bustinza paid the fee. Dkt. No. 46. On January 13, 2020, Bustinza satisfied the initial filing fee.

On January 15, 2020, the Court granted Bustinza's motion to proceed in forma pauperis and ordered service on the Defendants. Dkt. No. 62.

On February 6, 2020, the Defendants filed a motion to dismiss. Dkt. No. 78. The Defendants argue that Bustinza failed to exhaust his administrative remedies, which is a requirement under the Prison Litigation Reform Act. Dkt. No. 78, p. 7. The Defendants also argue that Bustinza has not stated a cognizable claim for relief against any of the Defendants. Id.

On April 6, 2020, Bustinza filed his response. Dkt. No. 86. Bustinza alleged that he filed grievances concerning his claims, which were ignored. Id., p. 3.

On July 17, 2020, the undersigned issued a report and recommendation, which recommended that the motion to dismiss be denied as to the claim that the jail official incited the inmates to assault Bustinza for filing the grievance, but that it be granted as to the remaining claims. Dkt. No. 87. Bustinza objected to the report and recommendation. Dkt. No. 101.

On December 16, 2020, the District Court adopted the report and recommendation in part and declined it to adopt it in part. Dkt. No. 105. It declined to adopt the report and

recommendation as to the claim that Bustinza was retaliated against by C.O. Rodriguez, in the form of a shakedown, finding that the claim survived a motion to dismiss. Id. It adopted the report and recommendation as to the remaining claims. Id. Thus, two claims of retaliation – the assault incited by the jail official and the shakedown – were allowed to proceed. Id. Bustinza was instructed to identify, no later than February 26, 2021, by name the officer who allegedly incited the assault. Id.

Bustinza was given several continuances, spanning five months, to identify the officer. Dkt. Nos. 122, 128. 135, 139. On July 2, 2021, Bustinza finally identified Sergeant A. Delgado as the officer who encouraged inmates to assault him. Dkt. No. 142. Thus, the only remaining defendants are Delgado and Rodriguez. Dkt. No. 153.

On January 5, 2022, Delgado and Rodriguez filed a motion to dismiss and motion for summary judgment. Dkt. No. 175. Rodriguez sought dismissal of the claims against him, noting that when Bustinza filed an "amended complaint" to identify Delgado as the officer who incited the assault, he did not make any claims against Rodriguez. Rodriguez argues that by not including any claims against him in the amended complaint, Bustinza has failed to state a claim upon which relief can be granted.

Delgado sought summary judgment of the claims against him, arguing that Bustinza has filed a "sham declaration" that he was the officer who incited the inmates. According to Bustinza, he had written down the name of the officer who incited the assault, but that Delgado had taken away the diary, so Bustinza forgot who incited the assault, only to later identify Delgado as the officer who incited it. Id. Delgado also noted that "nowhere" in Bustinza's prison file "is there any mention of a related-grievance, inmate assault, or medical care for an assault." Id., p. 12.

The Defendants also stated that they "assert qualified immunity." Dkt. No. 175. While they did not explicitly brief how their conduct did not violate clearly established law, the Court finds that this statement was sufficient to invoke the defense.

On February 11, 2022, Bustinza filed his response, reiterating that he was retaliated against for filing grievances. Dkt. No. 185.

On February 16, 2022, the Court noted that while the Defendants had previously produced a copy of Bustinza's prison file, it did not include records for March through May 2018, the time period covered in Bustinza's retaliation claims. Dkt. No. 188. The Defendants were ordered to supplement their filing with any records from that time period. Id.

On February 28, 2022, the Defendants supplemented their filing with additional jail records. Dkt. No. 191. The records included all of the grievances filed and the medical records. Id.

## II. Applicable Law

### A. Section 1983

As relevant here, 42 U.S.C. 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Id.

Section 1983 is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes. Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979). To prevail upon a 1983 claim a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013).

### B. Prison Litigation Reform Act

Under the Prison Litigation Reform Act (PLRA), the Court shall "on its own motion or on the motion of a party dismiss any action filed by a prisoner if the action" fails to state

a claim upon which relief can be granted. 42 U.S.C. 1997e(c)(1)-(2).  The PLRA applies to suits if the plaintiff was a prisoner at the time that the complaint was filed, even if they are subsequently released during the pendency of the suit. Williams v. Henagan, 595 F.3d 610, 619 (5th Cir. 2010).

A prisoner is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

The standard for dismissal for "failure to state a claim" under the PLRA is the same as the standard found in FED. R. CIV. P. 12(b)(6). Legate v. Livingston, 822 F.3d 207, 209 (5th Cir. 2016).

**C. Rule 12(b)(6)**

Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to plead sufficient facts "to state a claim to relief that is plausible on its face." Ferguson v. Bank of New York Mellon Corp., 802 F.3d 777, 780 (5th Cir. 2015) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then dismissal is proper. Id. at 679.

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019).  All well-pled facts must be viewed in the light most favorable to the plaintiff. Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan, 960 F.3d 190, 194 (5th Cir. 2020).

Dismissal, for failing to state a claim upon which relief can be granted, is a dismissal on the merits and with prejudice. Memon v. Allied Domecq QSR, 385 F.3d 871, 874 n. 6 (5th Cir. 2004).

**D. Summary Judgment**

Summary judgment is appropriate when the moving party has established that the pleadings, depositions, answers to interrogatories, admissions, and affidavits – if any – demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue is "real and substantial, as opposed to merely formal, pretended, or a sham." Bazan v. Hidalgo Cnty., 246 F.3d 481, 489 (5th Cir. 2001). A material fact is one that might influence the outcome of the suit. Id. Accordingly, a "genuine issue of material fact exists where evidence is such that a reasonable jury could return a verdict for the non-movant." Piazza's Seafood World, L.L.C. v. Odom, 448 F.3d 744, 752 (5th Cir. 2006).

If "the nonmoving party will bear the burden of proof at trial on a dispositive issue," then "a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

"If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." Norwegian Bulk Transport A/S v. International Marine Terminals Partnership, 520 F.3d 409, 412 (5th Cir. 2008). The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. Id.

Additionally, the Court must review all evidence in the light most favorable to the non-moving party. Piazza's Seafood World, 448 F.3d at 752. Factual controversies must be resolved in favor of the non-moving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Murungi v. Xavier Univ. of La., 313 Fed. App'x. 686, 688 (5th Cir. 2008) (unpubl.) (citing Little v.

Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)). Thus, "in the absence of proof," the court cannot "assume that the nonmoving party could or would prove the necessary facts." Little, 37 F. 3d at 1075.

Finally, "a court should not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment." Chacon v. Copeland, 577 Fed. App'x. 355, 360 (5th Cir. 2014) (unpubl.) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)) (internal quotations omitted).

The Court may grant summary judgment sua sponte, so long as the parties are given reasonable notice and an opportunity to present argument in opposition. Ross v. University of Tex. at San Antonio, 139 F.3d 521, 527 (5th Cir. 1998). A magistrate judge's report and recommendation constitute notice and an opportunity to respond, so long as the losing party is given an opportunity to object to the report and recommendation. Alexander v. Trump, 753 Fed. App'x 201, 208 (5th Cir. 2018); Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998); U.S. v. Willis, 273 F.3d 592, 597 n. 6 (5th Cir. 2001) (noting that the issues of notice and opportunity to respond "were satisfied due to the fact that the magistrate raised the issue and [the defendant] then had an opportunity to argue against the magistrate's findings to the district court. Had the district court raised the issue sua sponte, and not the magistrate, then [the defendant] would be entitled to have advance warning that the district court was considering dismissing the case on such grounds"); Prieto v. Quarterman, 456 F.3d 511, 519 (5th Cir. 2006) (a "magistrate judge's report and recommendation to the district judge alerting the parties" is considered notice and an opportunity to respond).

### E. Qualified Immunity

Qualified immunity protects "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "'One of the most salient benefits of qualified immunity is protection from pre-trial discovery.'" Zapata v.

10

Melson, 750 F.3d 481, 484-85 (5th Cir. 2014) (quoting Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012)).

If a defendant claims qualified immunity, the burden shifts to the plaintiff to establish the inapplicability of that defense. Terwilliger v. Reyna, 4 F.4th 270, 280 (5th Cir. 2021). "When a defendant official moves for summary judgment on the basis of qualified immunity, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." Aguirre v. City of San Antonio, 995 F.3d 395, 406 (5th Cir. 2021). "[C]onclusory allegations and assertions" are insufficient to defeat the invocation of qualified immunity. Hernandez v. City of Lubbock, Tex., 634 F. App'x 119, 121 (5th Cir. 2015), as revised (Dec. 28, 2015).

The two-part test for qualified immunity requires the Court to determine: (1) whether defendants' actions violated the plaintiff's constitutional rights; and (2) whether those rights were clearly established at the time of the defendant's actions. Pearson v. Callahan, 555 U.S. 223 (2009).

## III. Analysis

Allegations by pro se litigants must be given liberal construction to ensure that their claims are not unfairly dismissed because of their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972). That latitude, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981).

Bustinza has two retaliation claims pending: (1) the assault allegedly incited by Delgado and (2) the shakedown by Rodriguez. As to both Defendants, the Court concludes that Bustinza has not demonstrated a genuine issue of material fact, mandating summary judgment.

### A. Assault

As to the assault, Bustinza has failed to state a claim upon which relief can be granted. According to Bustinza, he filed a grievance on behalf of Torres, a fellow inmate. Delgado entered into the general population cell and instructed the inmates to take care of

11

the troublemaker who filed the grievance or else privileges would be revoked. This apparently resulted in the other inmates assaulting Bustinza. The prison file does not reflect any grievance that Bustinza filed on his own behalf as to the events regarding Torres.

Bustinza's first claim is one for retaliation. The elements of a retaliation claim are that (1) the prisoner "exercised a constitutional right to which (2) the official intended to retaliate against, and (3) the prisoner's constitutional exercise caused (4) the official to commit a retaliatory act that was more than de minimis." Petzold v. Rostollan, 946 F.3d 242, 252 (5th Cir. 2019) (emphasis original).

The first element – the exercise of a constitutional right – is fatal as to Bustinza's claim. Bustinza has a First Amendment right to file grievances on his own behalf. Haralson v. Campuzano, 2008 WL 11456157, at *7 (W.D. Tex. Mar. 27, 2008), aff'd, 356 Fed. App'x 692 (5th Cir. 2009). Inmates, however, have no constitutional right to provide legal assistance to other inmates. Shaw v. Murphy, 532 U.S. 223, 230-32 (2001). Accordingly, the Fifth Circuit has held that prisoners have "no constitutional right to assist other inmates with the filing of grievances." Barton v. Huerta, 613 Fed. App'x 426, 427 (5th Cir. 2015). Any retaliation claim premised upon officials attacking a prisoner for assisting other prisoners with filing grievances must fail because it is "not alleged to have been in response to his exercise of a constitutionally protected right." Id. Simply put, filing a grievance on behalf of another inmate is not a constitutionally protected right. Shanklin v. Chamblin, 2012 WL 2376271, at *6 (W.D. Tex. June 22, 2012); Lathum v. Lopez, 2001 WL 694495, at *4 (W.D. Tex. Mar. 28, 2001). Accordingly, summary judgment is appropriate. See Burns-Toole v. Byrne, 11 F.3d 1270, 1273 (5th Cir. 1994) (""Summary judgment should be granted where any essential element of the plaintiff's case is without factual support").

Because Delgado did not violate Bustinza's constitutional rights, there is no need for qualified immunity. "If [the Court] determine[s] that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity." Lytle v. Bexar Cty., Tex., 560 F.3d 404, 410 (5th Cir. 2009). However, to the extent that such conduct violated Bustinza's rights, it was not clearly established that a jail official could not retaliate against

12

an inmate for assisting another inmate in filing a grievance. Barton, 613 Fed. App'x at 427. As such, Delgado would be entitled to qualified immunity.

**B. Shakedown**

As to the shakedown, the Defendants argue that Bustinza has failed to state a claim upon which relief can be granted. The Court finds the Defendants' arguments to be lacking, but concludes that summary judgment is warranted, nevertheless.

As to the argument that Bustinza has failed to state a claim upon which relief can be granted, the Defendants assert that when Bustinza identified the officers – pursuant to a court order – he filed an amended complaint. Dkt. No. 142. Because that document did not include any claims related to the shakedown, the Defendants argue that Bustinza abandoned those claims, noting that normally an amended complaint renders all prior complaints of no effect. Dkt. No. 175. Because Bustinza is pro se, the Court must ensure that his claims are not unfairly dismissed because of his unfamiliarity with the law. Haines, 404 U.S. at 520. The Court finds that such an application of the law to the facts of this case would result in an unfair dismissal. Moreover, there is the possibility that Bustinza misunderstood the Court's order. In any event, it makes no difference.

The Court finds that summary judgment is warranted. As previously noted, the Court can enter summary judgment sua sponte, so long as the losing party is given notice and the opportunity to respond. Ross, 139 F.3d at 527. A magistrate judge's report and recommendation constitutes notice and an opportunity to respond. Alexander, 753 Fed. App'x at 208; Magouirk, 144 F.3d at 359; Willis, 273 F.3d at 597 n. 6; Prieto, 456 F.3d at 519.

As previously noted, the elements of a retaliation claim are that (1) the prisoner exercised a constitutional right that (2) the official intended to retaliate against, and (3) the prisoner's constitutional exercise caused (4) the official to commit a more than de minimis retaliatory act. Petzold, 946 F.3d at 252 (emphasis original). "To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident—such as the filing of disciplinary reports as in the case at bar—would not have occurred." Woods v. Smith,

13

60 F.3d 1161, 1166 (5th Cir. 1995). "Mere conclusory allegations of retaliation will not withstand a summary judgment challenge." Id. "A plaintiff must either produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred." Brown v. Taylor, 911 F.3d 235, 245 (5th Cir. 2018) (internal quotation marks omitted) (quoting Woods, 60 F.3d at 1166). It is not enough for the prisoner to have a "personal belief that he is the victim of retaliation." Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997)

The Court finds that Bustinza has made mere conclusory allegations of retaliation. The Court notes at the outset that Bustinza never filed a grievance or inmate request regarding misconduct by Rodriguez or any other jail official. His inmate request forms were requests for basic information, such as seeking mailing addresses or information about his charges and bond. Thus, there is no evidence of the grievances that allegedly precipitated the shakedown.

Furthermore, even if the inmate request forms are considered grievances, there is no causal connection between the requests and the alleged shakedown. The fact that the inmate request form preceded the shakedown is insufficient to show that the forms precipitated the shakedown. McClure v. Turner, 481 F. App'x 167, 172 (5th Cir. 2012). There is simply no evidence in the record linking the shakedown to any grievance filed by Bustinza.

Furthermore, none of the inmate request forms alleged any misconduct by Rodriguez or any other correctional officer. See Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006) ("A prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct") (emphasis added). There is no basis in the record to conclude that Rodriguez engaged in the shakedown because of Bustinza's requests for information. Idel v. Edwards, 2015 WL 5794472, at *10 (W.D. La. Sept. 30, 2015) ("The mere fact that a prisoner has filed a grievance does not make every later action with which he disagrees a retaliation claim actionable under the Constitution").

Given this record, the wisdom of this advice seems clear: "Claims of retaliation must . . . be regarded with skepticism, lest federal courts embroil themselves in every

disciplinary act that occurs in state penal institutions." Woods, 60 F.3d at 1166. Furthermore, "routine shakedowns of prison cells are essential to the effective administration of prisons." Hudson v. Palmer, 468 U.S. 517, 529 (1984). Bustinza has produced no evidence showing that any jail official had a constitutionally impermissible motive in shaking down his cell. Summary judgment is appropriate as to this claim.

Thus, the Court finds that Bustinza has not met his burden of showing that Rodriguez violated his constitutional rights. In the absence of a constitutional violation, there is no need for qualified immunity. Lytle, 560 F.3d at 410.

**IV. Recommendation**

It is recommended that the claim of retaliation related to being assaulted by inmates be dismissed with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted.

It is recommended that summary judgment be granted in favor of the Defendants as to any claim of retaliation related to the shakedown of the cell. It is further recommended that this case be closed.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings

on appeal, except on the grounds of plain error. <u>Alexander v. Verizon Wireless Servs., L.L.C.</u>, 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on March 4, 2022.

_____
Ronald G. Morgan
United States Magistrate Judge